# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIM PICKETT,                          )
                                      )
           Plaintiff,               )
                                      )
           v.                       )          1:21CV500
                                      )
KILOLO KIJAKAZI,                      )
Acting Commissioner of Social Security,[1]  )
                                      )
           Defendant.               )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kim Pickett ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on May 10, 2016, alleging a disability onset date of June 19, 2015. (Tr. at 140, 374-80.)[2] Her application was denied initially (Tr. at 126-35, 167-71) and upon reconsideration (Tr. at 136). Thereafter, Plaintiff requested an

---

[1] Kilolo Kijakazi was appointed the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #10].

administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 174-75.) On July 20, 2018, Plaintiff, along with her attorney, attended the subsequent hearing (Tr. at 140), after which the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 155-56). However, on November 29, 2019, the Appeals Council remanded the Plaintiff's case for a new hearing, noting multiple issues with the ALJ's decision. (Tr. at 162-65.) On July 1, 2020, Plaintiff attended her second administrative hearing by telephone. (Tr. at 18.) Plaintiff was again represented by an attorney, and Plaintiff, along with impartial medical and vocational experts, testified. (Tr. at 18.) Following the hearing, the ALJ again concluded that Plaintiff was not disabled under the Act (Tr. at 39), and on March 10, 2021, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 4-9).

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

Case 1:21-cv-00500-WO-JEP   Document 23   Filed 08/30/22   Page 2 of 14

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

_____

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date, June 19, 2015. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 20.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Degenerative disc disease, cataracts, neuropathy of her left elbow and left leg, chronic obstructive pulmonary disease (COPD), [and] cardiac ischemia[.]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

(Tr. at 21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 26-29.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, additional limitations:

> she can never climb ladders ropes or scaffolds, she can occasionally climb ramps and stairs; this person could frequently perform other postural movements; this individual is limited to frequent handling, fingering with non-dominant upper extremity; occasionally feel with her non-dominant upper extremity; needs an environment without vibration, and a safe environment which I define this as one where she will not be working with unguarded moving machinery; she cannot work at unprotected heights; she cannot work near concentrated common pulmonary irritants such as smoke, dust or fumes; she cannot work in direct sunlight or in an environment brighter than a typical office; she is not able to operate a motorized vehicle and could not travel among different locations during the workday.

(Tr. at 30.) At step four of the analysis, the ALJ found, based on the testimony of the vocational expert, that Plaintiff remained able to perform her past relevant work as an "operation clerk/legal clerk and records management," designated as an "administrative clerk" and "correspondence clerk" under the Dictionary of Occupational Titles. (Tr. at 38.) Based on the above findings, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 39.)

Plaintiff now raises two challenges to the ALJ's RFC assessment. Specifically, Plaintiff contends that the ALJ erred by (1) failing to include mental limitations in the RFC assessment and (2) failing to perform a function-by-function assessment of Plaintiff's abilities as defined in Social Security Ruling ("SSR") 96-8p. After a thorough review of the record, the Court finds that neither of Plaintiff's contentions require remand.

6

A. Mental limitations

Plaintiff first argues that the ALJ failed to properly account for her non-severe mental impairments when formulating the RFC assessment. She presents this challenge as two, alternative arguments. Plaintiff first contends that the ALJ erred in finding that Plaintiff "only had a mild limitation in the area of concentration, persistence and pace." (Pl.'s Br. [Doc. #16] at 15.) As Plaintiff correctly notes, "when evaluating mental impairments, an ALJ must employ the special technique described in 20 C.F.R. § 404.1520a to rate the degree of functional limitation resulting from the impairment[s]." (Pl.'s Br. at 12); See 20 C.F.R. § 404.1520a(b)(2). A five-point scale (none, mild, moderate, marked, and extreme) is used to rate the degree of functional limitation in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3)-(4)." (Pl.'s Br. at 12-13); (see also Tr. at 25-26.) In the present case, the ALJ found that Plaintiff had no more than mild limitations in any of these functional areas. (Tr. at 26.) Regarding concentration, persistence, and pace, the ALJ noted that Plaintiff "could prepare meals, watch TV, manage funds, use the internet, and handle her own medical care. . . . Additionally, the record fails to show any mention of distractibility [or] an inability to complete testing that assesses concentration and attention." (Tr. at 26.) Although the ALJ did acknowledge Plaintiff's testimony at both hearings that she experienced difficulties concentrating and focusing (Tr. at 31), she also noted that Plaintiff's GAF scores reflect mild symptoms, her providers have not assigned any long-term limitations due to her mental health impairments, and that Plaintiff had issues with treatment compliance. (Tr. at 22, 24-25, 36-37.) The ALJ also chronicled

Plaintiff's mental health treatment notes at length, which noted that, despite Plaintiff's ongoing alcohol abuse, her depressive symptoms were generally well managed with therapy and medications. (Tr. at 24, 25.) This evidence further reflected normal attention at most, if not all appointments, and in Plaintiff's own reports (Tr. at 24-25, 841, 901, 905, 1249, 1381, 1385, 1450, 1545, 1556, 1590, 1598, 1620, 1614), as well as no reported "difficulties with activities of daily living or meeting obligations and appointments" (Tr. at 24, 841, 901, 905). Among other things, the ALJ specifically noted that the records reflected that on examination "she had good attention" (Tr. at 24), and that "[s]he had depression noted by her primary care provider but it was mild and stable, without anything more than medication management. It did not appear to impact her functional abilities, even though she felt sad and down." (Tr. at 25.)

Plaintiff's counters this evidence by contending that the treatment records reflect abnormal attention findings. (Pl.'s Br. at 16) (citing Tr. at 1397, 1545, 1556). However, only one treatment record, in November 2017, reflects an assessment of impaired concentration or attention: on a form asking her provider to assess her "Attention/Concentration level," the counselor marked "Impaired." (Tr. at 1397.) However, every other assessment of Attention/Concentration at that provider, including by multiple doctors through 2018 and 2019, reflect that her Attention/Concentration on examination was "Not Impaired" and "Focused." (Tr. at 1450, 1545, 1556, 1590, 1598, 1614.) That provider also noted Plaintiff's self-reported strengths in February 2018 as being "focused" and that she "pay[s] attention to details." (Tr. at 1381.) Similarly, the assessments by Plaintiff's treating psychologist Dr. Bur

8

in 2017 and 2018 consistently reflected on that on examination her attention was "good." (Tr. at 841, 901, 905, 1249.)

Plaintiff also points to the ALJ's treatment of opinion evidence from Dr. Walter Harris, Plaintiff's eye doctor. When asked "How often during a typical workday is your patient's experience of symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks?" Dr. Harris answered "frequently." (Tr. at 1716.) However, as the ALJ notes in her opinion, Dr. Harris's opinion speaks to the impact of Plaintiff's visual impairment, not her mental limitations. He also noted good visual acuity and a full field of vision. (Tr. at 38.) The ALJ further explained that the functional limitations opined by Dr. Harris were given little weight because they were "speculative." (Tr. at 38.) Although Plaintiff now argues that this speculation does not extend to Dr. Harris' opinion regarding attention and concentration, the ALJ specifically noted that Plaintiff's "main complaint is glare." (Tr. at 38.) Nothing in Dr. Harris' statements suggests another source for any of his opined functional limitations, and Plaintiff suggests none. The ALJ fully addressed and considered Dr. Harris' treatment notes and opinion evidence regarding glare, as set out in the discussion of the opinion evidence, in the listing analysis, and in setting the RFC (Tr. at 29, 36, 38), and there is no basis for finding any error in the ALJ's assessment of Plaintiff's mental limitations.

In a related, alternative argument, Plaintiff contends that, even if her limitation in concentration, persistence, and pace was mild, the ALJ was still required to account for this finding when formulating Plaintiff's RFC. (Pl.'s Br. at 13). In making this argument, Plaintiff seeks to expand the Fourth Circuit's holding in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir.

2015). In <u>Mascio</u>, the Fourth Circuit held that the ALJ erred where he both (1) failed to include any functional limitation in the RFC relating to the plaintiff's <u>moderate</u> limitation in concentration, persistence or pace and (2) failed to provide any explanation for the absence of such a limitation. However, other cases in this District have noted that "the weight of post-<u>Mascio</u> authority among the district courts in the Fourth Circuit does not favor extending <u>Mascio</u> to <u>mild</u> limitation[s] in CPP." <u>Spradley v. Saul</u>, No. 1:20CV337, 2021 WL 1739013, at *7 (M.D.N.C. May 3, 2021) (collecting cases); <u>see also</u> <u>Younger v. Berryhill</u>, No. 2:18-CV-182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019) ("While some courts have interpreted <u>Mascio</u> to extend to mild limitations, these interpretations are merely persuasive authority and are therefore not binding on the Court.").

Moreover, even assuming that <u>Mascio</u> should be applied even in the context of mild limitations in the broad areas of functioning, Plaintiff fails to show any error on the part of the ALJ. As set out at length above, the ALJ discussed Plaintiff's mental impairments and their impact on her ability to concentrate, persist, and maintain pace. Most strikingly, the ALJ recounted Plaintiff's own, repeated statements that she experienced no limitations from her mental impairments. Similarly, no mental health providers, treating or otherwise, suggested any specific functional limitations. The ALJ concluded that Plaintiff's mental impairments in combination "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities" (Tr. at 22), that she "has no more than mild functional limitations documented as a result of mental health symptoms" (Tr. at 25), that "the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities" (Tr. at 26), and that "[a]s to her mental impairments . . . [Plaintiff's] providers

10

have not assigned her any specific functional long-term limitations due to these impairments"
(Tr. at 36). Accordingly, substantial evidence supports that ALJ's omission of mental
limitations from Plaintiff's RFC assessment.

B. Function-by-function assessment

Plaintiff next argues that "the ALJ never explained how she concluded . . . that
[Plaintiff] would perform the range of light work found in the RFC." (Pl.'s Br. at 20.) In
making this challenge, Plaintiff, relying on the Fourth Circuit's recent decision in Dowling v.
Comm'r of Soc. Sec., 986 F.3d 377 (4th Cir. 2021), contends that the ALJ committed a
reversible error by relying on "an incorrect regulatory framework" when assessing Plaintiff's
RFC. (Pl.'s Br. at 18.) In Dowling,

> the ALJ relied on an incorrect regulatory framework when he assessed
> Appellant's RFC. He did not cite to 20 C.F.R. § 416.945, the section of the
> Code of Federal Regulations that is titled "Your residual functional capacity"
> and explains how ALJs should assess a claimant's RFC. Nor did he cite to SSR
> 96-8p, the 1996 Social Security Ruling that provides guidance on how to
> properly evaluate an RFC. Finally, the ALJ did not indicate that his RFC
> assessment was rooted in a function-by-function analysis of how Appellant's
> impairments impacted her ability to work.

Dowling, 986 F.3d at 387. Here, despite Plaintiff's assertions to the contrary, none of the
Dowling factors apply. First, the ALJ does cite to 20 C.F.R. §§ 404.1545, 404.1520, and Social
Security Ruling 96-8p in explaining how the RFC is determined. (Tr. at 20.) Although the
ALJ does not again cite 20 C.F.R. §§ 404.1545, 404.1520, or Social Security Ruling 96-8p when
making the RFC determination itself, her RFC discussion encompasses more than an analysis
of the opinion evidence and Plaintiff's subjective statements. In Dowling, the ALJ's error
went beyond a failure to cite the correct section of the Act; he (1) treated the RFC assessment

11

and the symptom evaluation as "one and the same" and (2) failed to conduct a function-by-function analysis of relevant limitations. Dowling, 986 F.3d at 387.

In the present case, Plaintiff claims that the ALJ "never specifically stated how long [Plaintiff] can stand, walk, or perform the other physical functions listing in 20 C.F.R. § 404.1545(b)." (Pl.'s Br. at 20.) In particular, Plaintiff argues that the ALJ failed to properly consider whether Plaintiff could perform the demands of light work "from a cardiac standpoint." (Pl.'s Br. at 20) (citing Tr. at 1659). Plaintiff likens her case to Govero v. Saul, an out-of-Circuit, unpublished case in which the ALJ found that "it was not clear how the ALJ came to the conclusion that the plaintiff's heart and lung findings translated into an ability to perform the standing, walking, and climbing requirements of light work." (Pl.'s Br. at 20) (citing Govero v. Saul, No. 2:19-cv-00006-SPM, 2020 WL 1188099, at *7 (E.D. Mo Mar. 12, 2020)). In Govero, the court found "no medical source that explained how [the medical] findings demonstrate that Plaintiff can perform the standing, walking, and climbing requirements of light work, nor did the ALJ attempt to explain it." Govero, 2020 WL 1188099, at *7. Here, in contrast, the ALJ expressly based his RFC assessment on the opinions of Dr. Kathleen Mullin, an examining internal medicine physician, and Dr. Hugh Savage, an independent medical expert who testified at Plaintiff's second hearing. (See Tr. at 37-38.) As set out in the ALJ's decision,

> Dr. Mullin indicated that [Plaintiff] can lift and/or carry up to 50 pounds frequently and up to 20 pounds continuously[;] sit for eight hours, stand for eight hours, and walk for eight hours in an eight-hour workday; continuously use her hands[;] continuously operate foot controls[;] has no limitation of performance of postural activities[;] can never tolerate exposure to operating a motor vehicle, dusts odors, fumes, and pulmonary irritants[;] and occasionally tolerate exposure to unprotected heights, moving mechanical parts, extreme cold, and extreme heat.

12

(Tr. at 37.) The ALJ found that Dr. Mullin's assessment was "generally consistent with and supported by the internal medicine examination results" recounted in the decision, but that Plaintiff required additional limitations. (Tr. at 37.) Specifically, the ALJ found that Plaintiff "required some limitation with her left-non-dominant upper extremity" (Tr. at 37), and that the "overall record," and Plaintiff's cardiac findings in particular, merited limitation to light, rather than medium work, as opined by Dr. Mullin (Tr. at 38).

Dr. Savage, who specializes in cardiovascular medicine and internal medicine, testified that "[f]rom a cardiac standpoint, [Plaintiff's] exertion is not limited." (Tr. at 37, 78). The ALJ also noted that Dr. Savage found that, although Plaintiff had required an implanted pacemaker, "her heart is strongly functioning [at the time of the hearing in 2020], and her cardiac condition could actually normalize if she stopped drinking." (Tr. at 37, 78-79.) The ALJ determined that Dr. Savage's "opinion that [Plaintiff] is not exertionally limited by her cardiac impairment to be partially persuasive," but found "that the overall record supports a finding that [Plaintiff] is limited to the range of light work as described above." (Tr. at 38.) In short, it appears that the ALJ gave Plaintiff the benefit of the doubt in limiting her to light work. Moreover, the RFC reflects greater limitations than those opined by Dr. Mullin in nearly every area. In addition to limiting Plaintiff to only frequent handling and fingering with her left hand and arm, the ALJ also limited Plaintiff to only frequent postural activities. The ALJ also prohibited Plaintiff from working in bright light due to her visual problems with glare; restricted her to occasionally climbing ramps and stairs and never climbing ladders, ropes, or scaffolds; and proscribed her from working at heights and around moving machinery. (Compare Tr. at 30, 37.) Other than challenging the impact of her cardiac condition on her

13

exertional capacity, Plaintiff notes no evidence that the ALJ failed to consider when assessing her RFC, nor does she suggest the inclusion of any further limitations. Accordingly, this is not a case where the "ALJ fail[ed] to assess [Plaintiff's] capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636. Here, the ALJ reviewed the evidence, explained her decision, and explained the reasons for her determination, and that determination is supported by substantial evidence in the record, including opinion evidence from multiple experts.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #15] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #21] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 30th day of August, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge